IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

MICHAEL J. WALKER,           )
                                         )
           Plaintiff,           )    TC-MD 120065N
                                         )
          v.                    )
                                         )
DESCHUTES COUNTY ASSESSOR,    )
                                         )
           Defendant.     )    **DECISION**

Plaintiff appealed the real market value of property identified as Account 247436 (subject property) for the 2010-11 and 2011-12 tax years. In an Order issued June 13, 2012, the court granted Defendant's Amended Motion to Dismiss Plaintiff's appeal of the 2010-11 real market value of the subject property. The only issues remaining before the court are the real market value and exception real market value of the subject property for the 2011-12 tax year.

A telephone trial was held in this matter on December 13, 2012. Plaintiff appeared and testified on his own behalf. Laurie Craghead, Assistant Legal Counsel to Deschutes County, appeared on behalf of Defendant. Dan Russell (Russell), Residential Appraiser 2, testified on behalf of Defendant. Plaintiff's Exhibits 1 through 8 and Defendant's Exhibits A through E were received without objection.

## I. STATEMENT OF FACTS

The subject property is a two-bedroom, one-bathroom house situated on a 0.69-acre lot in Terrebonne, Oregon. (Def's Ex D at 1.) Plaintiff testified that the subject property lacks a view and access is via gravel road. He testified that he purchased the subject property land in 2004 for about $25,000, including the cost to consolidate lots included in the subject property land.[1]

---

[1] Plaintiff testified that the subject property land is one tax lot, but it had previously been subdivided into 72 lots. He testified that he consolidated those lots after his purchase of the subject property land.

The subject property house, built in 1963, includes 1,092 square feet of living area. (Def's Ex D at 1.) Plaintiff testified that he acquired the subject property house for free in 2009 and paid about $15,000 to transport it to the subject property site. He testified that the subject property house was set on "cribbing" in 2009 and affixed to the land in 2010. Plaintiff testified that, during 2010, he replaced the kitchen countertops; refinished the hardwood floors; replaced the windows; and painted the exterior of the house. (*See* Ptf's Ex 6B.) He testified that he did not replace the subject property pipes or wiring; the only new plumbing and electrical work was to connect the subject property house to the site. Plaintiff provided a list of his costs. (*Id.*) Excluding the cost of the land and moving the house, Plaintiff reported spending $32,322.13 on the subject property improvements. (*Id.*) He testified that he finished his work on the subject property house by July 2010. (*See also* Def's Ex C (permits).)

Plaintiff testified that the subject property roof is in poor condition and must be replaced. (*See* Ptf's Ex 7 (photos).) Russell testified that, in his opinion, it would not cost more than "a couple thousand dollars" to replace the roof. He testified that his estimate is based on his own experience having a roof replaced and through his experience reviewing estimates.

A.      *Plaintiff's real market value evidence*

Plaintiff testified that Terrebonne is very small and properties are very close together. He testified that most properties have views of the Cascade Mountains or of Smith Rock State Park. The parties agreed that the market in Terrebonne as of January 1, 2011, "consist[ed] primarily of properties sold by banks."[2] (*See* Def's Trial Mem at 2.)

/ / /

---

[2] Plaintiff's comparable sales were characterized as "distress" or "foreclosure" sales in the county's records. (*See* Ptf's Exs 1B-2, 2B-2, 3B-2 ("lender, distress or short sale"); Ptf's Exs 4B-2, 5B-2 ("estate/lender/after foreclosure").) Plaintiff did not dispute the county's characterization of those sales.

Plaintiff identified five sales in Terrebonne close to the January 1, 2011, assessment date. (*See* Ptf's Exs 1-5.) Plaintiff testified that his sales 1, 2 and 3, were each two-bedroom, one-bathroom houses similar to the subject property. (Ptf's Exs 1-3.) Plaintiff testified that sale 1 is a 1,170-square foot house built in 1970 on 0.29 acres; it sold for $30,217 on March 1, 2011. (Ptf's Exs 1B, 1B-2.) Plaintiff testified that sale 2 is a 944-square foot house built in 1950 on 0.67 acres; it sold for $34,000 on December 8, 2010. (Ptf's Exs 2B, 2B-2.) Plaintiff testified that sale 3 is a 756-square foot house built in 1961 on 0.23 acres; it sold for $36,000 on June 23, 2010. (Ptf's Exs 3B, 3B-2.) Plaintiff identified two additional sales to demonstrate the relationship between number of rooms and real market value. Plaintiff testified that sale 4 is a 1,102-square foot house built in 1978 with three bedrooms and one bathroom on 0.29 acres; it sold for $50,000 on August 30, 2010. (Ptf's Exs 4B, 4B-2.) Plaintiff testified that sale 5 is a 1,280-square foot house built in 1971 with three bedrooms and two bathrooms on 0.11 acres; it sold for $52,900 on November 24, 2010. (Ptf's Exs 5B, 5B-2.)

Plaintiff testified that he is a "builder-investor," not an appraiser. He testified that he did not make adjustments to any of his comparable sales. Plaintiff testified that he did not consider adjustments necessary because his comparable sales were similar to the subject property in age, size, and location. Plaintiff testified that he assumed that properties constructed around the same time used similar materials and were of a similar condition.

Russell questioned the comparability of Plaintiff's sales to the subject property. He noted that the "marketing remarks" for Plaintiff's sales 1 through 4 include comments suggesting that each of those homes needs work and is inferior in condition to the subject property. (Ptf's Ex 1B ("[g]reat starter home or investment waiting for your TLC! HUD Owned Home. Sold As Is"); Ptf's Ex 2B ("property has lots of potential-home could be fixed up to be cute, or torn down and

a new home built"); Ptf's Ex 3B ("Great Potential"); Ptf's Ex 4B ("a good project home with huge potential!").) Russell noted that the county records reveal that each of Plaintiff's sales 1 through 5 have vinyl and carpet flooring and metal windows, which are inferior to the hardwood floors and vinyl windows in the subject property. (*See* Ptf's Exs 1B-7, 1B-8, 2B-4, 3B-5, 4B-3, 5B-4.) Russell testified that, looking at the photographs of sale 5, it appears that the property has hardwood floors and new countertops. (Ptf's Ex 5B.) The court inquired why the county records for Plaintiff's sale 5 state that it has vinyl and carpet floor covers and metal windows. (*See id*.) Russell testified that the county had probably not updated its records for sale 5.

B.      *Defendant's value evidence*

Russell relied on the sales comparison approach. (Def's Ex D.) Russell testified that he identified three comparable sales of "ranch" style homes of "average" quality, none of which are "view properties." (*Id.* at 1.) Russell's comparable properties are located within 1.1 miles of the subject property. (*Id.*) Sale 1 is a 1,470-square foot house built in 1978 with three bedrooms and one bathroom that sold for $69,500 on January 27, 2011. (*Id.*) Sale 2 is a 1,560-square foot house built in 2002 with three bedrooms and two bathrooms that sold for $85,000 on March 4, 2011. (*Id.*) Sale 3 is a 1,032-square foot house built in 1979 that sold for $75,000 on April 9, 2010. (*Id.*) Russell testified that sale 2, which is newer than the subject property, is located in a subdivision directly behind the subject property. He testified that sale 3 is the most comparable to the subject property with respect to condition and size.

Russell made adjustments for age, gross living area, garage size, and "amenities" including carports, patios, and sheds. (Def's Ex D at 1.) He determined adjusted sale prices of $55,200, $58,000, and $72,800 for sales 1, 2, and 3, respectively, and concluded that the 2011-12 real market value of the subject property was $62,000. (*Id.*)

C.      *Allocation of real market value to land and improvements*

Russell testified that he considered four land sales in Terrebonne to determine the subject property land value. (Def's Ex E.) He testified that he found only four land sales in Terrebonne close to the assessment date: 0.51 acres in a "superior area" that sold for $65,000 on January 21, 2010; 0.17 acres with "superior [mountain] views" that sold for $37,000 on September 20, 2010; 0.53 acres in a "superior area" that sold for $16,900 on February 9, 2011; and 0.23 acres in a "similar" location that sold for $12,000 on May 13, 2011. (*Id.* at 1.) Russell testified that he considered sale 4 most similar to the subject property in terms of location and views. He testified that he found sales 3 and 4, for $16,900 and $12,000, respectively, supported his land value conclusion of $15,560, not including site improvements.

D.      *2011-12 roll values and requested values*

The 2011-12 real market value of the subject property was $88,440, with $53,450 attributed to the land and $34,990 attributed to the improvements. (Ptf's Compl at 5.) The 2011-12 exception real market value of the subject property was $34,990. (Def's Ex A at 1.) Plaintiff stated at trial that he requests the 2011-12 real market value be reduced to $45,758, with $25,010 attributed to the land ($13,560 for the land and $11,450 for the site developments) and $20,748 attributed to the improvements. Defendant requests that the 2011-12 real market value be reduced to $62,000, with $27,010 attributed to the land ($15,560 for the land and $11,450 for the site developments) and $34,990 attributed to the improvements. (Def's Ans at 2.)

## II. ANALYSIS

The issues before the court are the real market value and exception real market value of the subject property for the 2011-12 tax year. "Real market value is the standard used

/ / /

throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citations omitted). Real market value is defined in ORS 308.205(1),[3] which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2011-12 tax year was January 1, 2011. ORS 308.007; ORS 308.210.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). There are three approaches of value that must be considered, although all three may not be applicable in a given case. OAR 150-308.205-(A)(2)(a). The three approaches are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. *Id.* Both parties relied on the sales comparison approach. "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions." OAR 150-308.205-(A)(2)(c). "The court looks for arm's length sale transactions of property similar in size, quality, age and location * * * in order to determine the real market value" of the subject property. *Richardson*, WL 21263620 at *3.

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Plaintiff "must provide competent evidence of the [real market value] of [his] property."

---

[3] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2009.

*Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D, WL 879285 (Mar 13, 2012). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

A.    *2011-12 real market value*

Plaintiff identified five sales that occurred close to the January 1, 2011, assessment date and relied on three of those sales that he considered comparable to the subject property. The three sales that Plaintiff relied upon sold for prices ranging from $30,217 to $36,000. Plaintiff considered the two additional sales, for $50,000 and $52,900, superior to the subject property. Plaintiff's analysis is incomplete and unreliable for several reasons. First, Plaintiff's testimony revealed that, although he has some experience purchasing real estate, Plaintiff is not an appraiser, real estate agent, or licensed broker. Second, and related to Plaintiff's lack of expertise, Plaintiff did not make adjustments to his comparable sales. Third, as noted by Russell, the descriptions of Plaintiff's comparable sales in the marketing remarks and county records suggest that Plaintiff's comparable sales were inferior to the subject property in quality and condition. The accuracy of the county records was called into question by Russell's testimony that, at least with respect to Plaintiff's sale 5, the county records failed to accurately reflect the

/ / /

quality and condition of that property. Nevertheless, the evidence as a whole suggests that Plaintiff's price range of $30,000 to $36,000 is low for the subject property.

Russell also identified three comparable sales, made adjustments, and determined a price range of $55,200 to $72,800 for the subject property. Based on that range, he concluded the real market value of the subject property was $62,000. Plaintiff criticized Russell's selection of comparable sales, but offered no competent evidence to rebut Russell's selection of sales or his adjustments to those sales. The court notes, however, that the net adjustment was downward for each of Russell's comparable sales. Russell's comparable sales were all superior to the subject property and did not bracket the subject property. That suggests that Russell's real market value conclusion for the subject property may be somewhat overstated. Based on the evidence presented, a real market value at the low end of Russell's price range is supported. The court finds that the 2011-12 real market value of the subject property was $56,000.

B.      *Exception value; allocation of 2011-12 real market value to land and improvements*

The value of new property and new improvements is commonly referred to as "exception value"; it "is a term used to identify certain changes to property for the current tax year that result in additions to both [real market value] and [maximum assessed value], and an *exception* to the typical constitutional and statutory cap of three percent on annual increases to [maximum assessed value]." *Banducci v. Douglas County Assessor*, TC-MD No 090069C, WL 3706451 at *1 n4 (Sept 23, 2010) (internal citations omitted) (emphasis in original).[4] " 'New property or

---

[4] In Oregon, real property is taxed on the lesser of the property's real market value or maximum assessed value. ORS 308.146(2); ORS 308.153(3). When a new improvement is added to property, the maximum assessed value is the sum of the maximum assessed value of the property as if it had not changed and the maximum assessed value of the new improvement. ORS 308.153(1). The maximum assessed value of the new improvement is the product of: the amount by which the real market value of the new improvement exceeds the real market value of any retirements; and the ratio of the average maximum assessed value for similar property in the area to the average real market value for similar property in the area. ORS 308.153(1)(b),(2)(a); ORS 308.149 (defining terms used in ORS 308.153(1)(b)).

new improvements' means changes in the value of property as the result of: (A) [n]ew construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property." ORS 308.149(5)(a). It does not include changes in value as the result of "(A) General ongoing maintenance and repair; or (B) Minor construction." ORS 308.149(5)(b). "The value of new property or new improvements shall equal the real market value of the new property or new improvements reduced (but not below zero) by the real market value of retirements from the property tax account." ORS 308.153(2)(a). Exception value "must exclude factors such as changes in inflation, market demand, and construction codes." *Magno v. Dept. of Rev.*, 19 OTR 51, 63 (2006), citing *Hoxie v. Dept. of Rev.*, 15, OTR 322, 326 (2001).

Plaintiff testified that, during 2010, the subject property house was affixed to the land and he made various improvements to the house. Permits provided by Defendant support Plaintiff's testimony regarding the time that improvements were made to the house. Because the subject property house, with related improvements, was completed in 2010, it was "new property" as of the 2011-12 tax year. ORS 308.149(5)(a). The value of new property is the real market value of that new property less any retirements from the property tax account. ORS 308.153(2)(a). The court received no evidence of "retirements" from the subject property account. Thus, Defendant properly determined that the 2011-12 exception real market value of the subject property was the 2011-12 improvements real market value.

The parties offered evidence on the allocation of the 2011-12 real market value to land and improvements. Plaintiff relied on the improvement real market values on the assessment and tax rolls for each of his comparable sales to determine a price per square foot for the subject property improvements. The assessment and tax rolls are not "actual market transactions" and are not, therefore, helpful in determining the improvement real market value of the subject

property. OAR 150-308.205-(A)(2)(c). Russell relied on four land sales in Terrebonne and placed the most weight on his third and fourth land sales for $16,900 and $12,000, respectively. Plaintiff testified that he considered Russell's land sale 4 to be the most comparable to the subject property land. Based on those land sales, Russell concluded a land value of $15,560; adding the value of site improvements, he concluded a land real market value of $27,010.

The court finds that Russell's land real market value conclusion of $27,010 is supported by the evidence presented. The court concludes that, for the 2011-12 tax year, the land real market value of the subject property was $27,010 and the improvements real market value was $28,990, for a total real market value of $56,000. The court further concludes that the 2011-12 exception real market value of the subject property was $28,990.

### III. CONCLUSION

After carefully considering the evidence, the court concludes that, for the 2011-12 tax year, the real market value of the subject property was $56,000, with $27,010 allocated to the land and $28,990 to the improvements. Because the subject property improvements were new as of the 2011-12 tax year, the 2011-12 exception real market value was $28,990. Now, therefore,

IT IS THE DECISION OF THIS COURT that, as set forth in the court's Order issued June 13, 2012, Plaintiff's appeal for the 2010-11 tax year is dismissed.

IT IS FURTHER DECIDED that the real market value of property identified as Account 247436 was $56,000 for the 2011-12 tax year, with $27,010 allocated to the land and $28,990 to the improvements.

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that the exception real market value of property identified as Account 247436 was $28,990 for the 2011-12 tax year.

Dated this ____ day of February 2013.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Allison R. Boomer on February 15, 2013. The court filed and entered this Decision on February 15, 2013.*